**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-03286-NYW-SBP

VINCENT TERRANOVA,

      Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion for Summary Judgment"), [Doc. 61], and Safeco Insurance Company of America's Motion for Summary Judgment ("Defendant's Motion for Summary Judgment"), [Doc. 62]. Upon review of the Motions and the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument would not materially assist in the resolution of these matters. For the following reasons, Plaintiff's Motion for Summary Judgment is respectfully **DENIED** and Defendant's Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises out of water damage to a property in Morrison, Colorado, and a subsequent dispute over insurance coverage and an appraisal process between Plaintiff Vincent Terranova ("Plaintiff" or "Mr. Terranova") and his insurance company, Safeco Insurance Company of America ("Defendant" or "Safeco"). *See* [Doc. 50]. Mr. Terranova

asserts three claims against Safeco:   (1) unreasonable delay or denial of insurance benefits in violation of Colo. Rev. Stat. §§ 10-3-1115 and -1116 ("statutory bad faith"); (2) bad faith under Colorado common law ("common law bad faith"); and (3) vacatur of the appraisal award.  [*Id.* at ¶¶ 77–105].

Both Parties have moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment in their favor on some or all of these claims.  Plaintiff seeks partial summary judgment in his favor on his claim to vacate the appraisal award, *see* [Doc. 61], and Defendant seeks summary judgment in its favor on both of Plaintiff's bad faith claims as well as the claim to vacate the appraisal award, *see* [Doc. 62].  Both Motions are fully briefed, *see* [Doc. 63; Doc. 64; Doc. 65; Doc. 66], and the Court considers them below.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard."  *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").  However, the

summary-judgment burden slightly differs depending on which party bears the ultimate burden at trial.  A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).  But "if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  A moving party who bears the burden at trial "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Id.*

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court views each motion in the light most favorable to the nonmoving party.  *Banner Bank*, 916 F.3d at 1326.

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the summary judgment record and are undisputed unless otherwise noted.[1]

---

[1] As the Parties list nearly one hundred facts between their Motions, many of which are framed as disputed to varying degrees, the Court limits its discussion at this stage to those facts that are material to resolving the Motions.  Additionally, the Parties identify several disputes of fact that only demonstrate denial of a specific portion of a statement

1.      Between August 10, 2016, and August 10, 2017, Defendant insured Plaintiff's residential property at 43 West Ranch Trail, Morrison, Colorado 80465 (the "Property") under Policy No. OY7555527 (the "Policy").  [Doc. 62 at ¶ 1; Doc. 63 at 2 ¶ 1; Doc. 62-1 at 1].[2]

2.      On January 31, 2017, the Property suffered a water loss.  [Doc. 62 at ¶ 7; Doc. 63 at 2 ¶ 7; Doc. 62-2 at 1].

3.      On February 6, 2017, Safeco inspected the Property.  [Doc. 62 at ¶ 9; Doc. 63 at 2 ¶ 9; Doc. 62-2 at 200–05].

4.      On February 17, 2017, Safeco estimated the total loss at $111,376.42 and provided Mr. Terranova a payment of $86,362.32 that accounted for depreciation and the Policy's deductible.  [Doc. 62 at ¶ 10; Doc. 63 at 2 ¶ 10; Doc. 62-2 at 195].

5.      Based on a subsequent March 2, 2017, inspection by Donan Engineering ("Donan"), Safeco issued a supplemental payment of $18,668.11.  [Doc. 62 at ¶ 11; Doc. 63 at 2 ¶ 11; Doc. 62-2 at 119–120].

6.      Plaintiff then provided Safeco an estimate of $475,912.80, which led Safeco to revise its estimate to $208,009.45 and issue a supplemental payment on September 5, 2017.  [Doc. 62 at ¶¶ 16–17; Doc. 63 at 2 ¶¶ 16–17; Doc. 62-2 at 114; Doc. 62-5 at 17].

7.      Between September 2017 and October 2018, Safeco requested on several occasions that Plaintiff provide additional information, including a proof of loss, to assist

---

of fact or fail to offer competent contrary evidence, in contravention of Rule 56(c) of the Federal Rules of Civil Procedure and NYW Civil Practice Standard 7.1D(b)(4).  When this is the case, the Court accepts the portions that are not objected to or otherwise disputed as undisputed without further note.

[2] When citing to transcripts, the Court cites to the page and line numbers appearing on the transcript.  In all other instances, the Court cites to the page numbers generated by the CM/ECF system.

in resolving the claim.  [Doc. 62 at ¶¶ 18–19; Doc. 63 at 2 ¶¶ 18–19; Doc. 62-2 at 89–112].

8.      On January 11, 2019, Plaintiff's public adjuster Michael Stoycheff ("Mr. Stoycheff") contacted Safeco to request a tolling agreement in anticipation of litigation between the Parties.  [Doc. 62 at ¶ 21; Doc. 63 at 2 ¶ 21; Doc. 62-2 at 68].

9.      In October 2019, Mr. Stoycheff submitted a proof of loss totaling $853,777.00 along with estimates and consultant reports.  [Doc. 62 at ¶ 24; Doc. 63 at 2 ¶ 24; Doc. 62-2 at 58].

10.     Safeco reinspected the Property the next month and issued a supplemental payment of $10,614.67 in January 2020.  [Doc. 62 at ¶¶ 25–27; Doc. 63 at 2 ¶¶ 25–27; Doc. 62-2 at 7–8, 22].

11.     On January 27, 2020, Plaintiff demanded appraisal pursuant to the Policy.  [Doc. 62 at ¶ 28; Doc. 63 at 2 ¶ 28; Doc. 62-2 at 5–6].  The Policy's appraisal provision states:

> **Appraisal.**  If you and we do not agree on the amount of the loss, including the amount of ***actual cash value*** or ***replacement cost***, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.  The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.  The appraisers shall then appraise the loss, stating separately the ***actual cash value*** or ***replacement cost*** of each item, and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.
>
> Each party will:
>
> **a.** pay its own appraiser; and
> **b.** bear the other expenses of the appraisal and umpire equally.

> In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy.  If there is an appraisal, we still retain the right to deny the claim.

[Doc. 62 at ¶ 5; Doc. 63 at 2 ¶ 5; Doc. 62-1 at 8].

12.     Plaintiff selected Brent Johnson ("Mr. Johnson") as his appraiser, Safeco selected Mark Neufeld ("Mr. Neufeld") as its appraiser, and the appraisers retained Roy Becker ("Mr. Becker") as the umpire.  [Doc. 62 at ¶ 32; Doc. 63 at 3 ¶ 32; Doc. 62-7 at 46:11–47:20].

13.     The appraisers visited the Property in June 2020, exchanged estimates, and then visited the Property again with Mr. Becker on March 5, 2021.  [Doc. 62 at ¶¶ 36–39; Doc. 63 at 3 ¶¶ 36–39; Doc. 62-6 at 74:24–79:21; Doc. 62-10 at ¶¶ 5–6; Doc. 62-11 at 173:6–21].

14.     Mr. Becker prepared an estimate, to which Mr. Johnson prepared a response.  [Doc. 62 at ¶ 40; Doc. 63 at 3–4 ¶ 40; Doc. 66 at 2 ¶ 40; Doc. 62-6 at 93:16–94:18, 100:9–11].

15.     On September 14, 2021, the appraisal panel entered an award of $464,465.70 (replacement cost) and $399,308.69 (actual cash value) (the "appraisal award").  [Doc. 62 at ¶ 29; Doc. 63 at 2 ¶ 29; Doc. 62-5 at 181].

16.     On October 1, 2021, Safeco paid Plaintiff the difference between the actual cash value of the appraisal award and its prior payments—except for the $3,869.76 the appraisal panel allocated to repairing the Property's rear patio, as to which Safeco maintained a denial of coverage based on Donan's 2017 report.  [Doc. 62 at ¶ 30; Doc. 63 at 2 ¶ 30, 7 ¶¶ 18–19; Doc. 66 at 5 ¶¶ 18–19; Doc. 62-2 at 2; Doc. 62-5 at 108; Doc. 63-14].

## ANALYSIS

I.   **Bad Faith Claims**

A.   **Legal Framework**

There are two types of bad faith claims available under Colorado law: statutory bad faith and common law bad faith. *Dowgiallo v. Allstate Ins. Co.*, No. 19-cv-03035-KMT, 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020). Starting with the former, Colorado statutes impose certain obligations on insurance companies, instructing that insurers "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). To succeed on a claim under this statute, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

Insurers also have common law duties to deal in good faith with their insureds. *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). "The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020). In addition to demonstrating that the insurer delayed or denied benefits without a reasonable basis, "a common law insurance bad

faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id.*

"The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson*, 89 P.3d at 415); *see also Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim."). Typically, whether an insurance company acted reasonably in the handling of a claim for insurance benefits is a "question of fact for the jury." *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). But "in appropriate circumstances," such as "when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.*

## B.    Discussion

Defendant argues that Plaintiff's statutory bad faith claim fails because there is no dispute of material fact that it acted reasonably at all stages of the claim process and promptly tendered all payments owed to Plaintiff. [Doc. 62 at 13–15]. Defendant further contends that the common law bad faith claim cannot survive summary judgment because "the undisputed facts establish that Safeco's conduct was eminently reasonable" and Plaintiff has presented no "evidence that Safeco knowingly or recklessly disregarded the claim's validity." [*Id.* at 15–17]. For the reasons that follow, the Court finds that Plaintiff's expert evidence creates triable issues of fact as to both claims.

Opposing summary judgment, Mr. Terranova contends that expert opinions by his claims handling expert Steven Strzelec ("Mr. Strzelec") create a dispute of material fact

as to the reasonableness prong of the statutory and common law bad faith claims, as well as the knowing-or-reckless-disregard prong of the common law bad faith claim.[3]  *See* [Doc. 63 at 15].  Upon review of the record, the Court respectfully agrees:  the Parties' evidence-supported statements of fact suggest there is conflicting evidence with respect to how Safeco addressed Mr. Terranova's concerns in connection with the claims process and evaluated and paid his water loss claim.  That conflict is material to the determination of whether Safeco investigated Plaintiff's insurance claim in good faith or departed from industry standards, which in turn plays into whether Safeco acted in knowing or reckless disregard of whether its conduct in the claim process was unreasonable.  *See Wak Inc. v. Ohio Sec. Ins. Co.*, No. 16-cv-01191-MSK-MJW, 2019 WL 859709, at *4 (D. Colo. Feb. 22, 2019) ("This element focuses on [the insurer's] knowledge, but it is premised upon proof that [the insurer] disregarded the validity of the claim—which is the essence of the first element of proof."); *see also Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) ("[I]n the first-party context an insurer acts in bad faith in delaying the processing of or denying a valid claim when the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable.").

On the one hand, the undisputed facts recited above establish that Safeco issued payments at every stage of the dispute, that several delays in the claim handling process

---

[3] Considering the overlapping nature of the issues involved, the Court finds that Plaintiff's arguments with respect to Mr. Strzelec's opinions apply to both the reasonableness element of both bad faith claims and the knowing-or-reckless-disregard element of the common law claim.  *See, e.g.*, [Doc. 63 at 8, 15 (arguing, under heading about reckless disregard, that Mr. Strzelec "cites failures, including not giving equal consideration to the insured's interests, failing to conduct a reasonable and timely investigation of the insured's first party loss, and not timely paying all amounts owed under the Policy")].

were attributable to Mr. Terranova, and that Safeco timely paid nearly the entire appraisal award. On the other hand, Plaintiff has retained Mr. Strzelec, "a claims practices expert, to provide opinions regarding the standards applicable to property and casualty claims handling and whether Safeco complied with such standards in its handling of Terranova's claim." [Doc. 63 at 15]; *see generally* [Doc. 63-17]. Mr. Strzelec, whose qualifications have not been challenged by Safeco in the context of its Motion for Summary Judgment, renders the following opinions in his preliminary disclosures:

> Based on my review of the produced documents, it is my opinion that Safeco failed to meet their obligations of good faith and fair dealings and failed to meet minimum industry standards in the handling of the insured's loss. This includes the obligation to give equal consideration to the interests of the insured. Safeco failed to conduct a reasonable and timely investigation and evaluation of the insured's first party loss and to timely pay all amounts owed under the policy. Industry standards are clear; the insured's responsibility is to report a direct loss to the insured property and the insurer is responsible to investigate and pay all covered damages.

[Doc. 63-17 at 14]. Mr. Strzelec further opines that Safeco deviated from industry standards in how it communicated with Plaintiff and evaluated the loss during the claims process, among other matters. [*Id.* at 26–27].

The Court is unpersuaded by Safeco's contention, in its Reply, that "Plaintiff's general reference to Mr. Strzelec's report does nothing to establish that Safeco acted unreasonably in handling Plaintiff's claim." [Doc. 66 at 8]. As a substantive matter, that is precisely the proposition that Mr. Strzelec's opinions support. Procedurally, Defendant argues that Mr. Strzelec's opinions cannot be considered at this posture because "[u]nsworn expert reports are not admissible to support or oppose a motion for summary judgment." [*Id.*]. To be sure, Mr. Strzelec's report appears to be unsworn. *See generally* [Doc. 63-17]. However, this Court agrees with the Honorable William J. Martínez that this

line of argument, which relies on authority predating recent amendments to Rule 56, does not account for those intervening changes:

> Federal Rule of Civil Procedure 56 underwent significant amendments in 2010. As the Court has described elsewhere, it is not clear if declarations or affidavits are needed *at all* under the revised rule, given its emphasis on whether an assertion may be supported by evidence admissible at trial, not on the form of the assertion in the summary judgment record. *See Lyall v. City of Denver*, 2018 WL 1470197, at *4–6 (D. Colo. Mar. 26, 2018).
>
> In any event, the Court has repeatedly faced and "routinely rejected this argument in the context of unsworn expert reports submitted as evidence of what an expert would say at trial." *Id.* at *5; *see also Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1214–15 (D. Colo. 2017); *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1182 n.11 (D. Colo. 2017); *Pertile v. Gen. Motors, LLC*, 2017 WL 4237870, at *2 & n.3 (D. Colo. Sept. 22, 2017); *Miller v. BNSF Ry. Co.*, 2017 WL 1880603, at *2 (D. Colo. May 9, 2017); *Gunn v. Carter*, 2016 WL 7899902, at *2 (D. Colo. June 13, 2016). The Court's view is partly informed by the fact that "the procedure surrounding expert reports provides safeguards and indicia of reliability similar to those provided by sworn affidavits or declarations," *id.*; and partly by the "utterly formalistic" nature of the objection, *Sanchez*, 299 F. Supp. 3d at 1182 n.11, which has no bearing on whether "a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2).

*Silverman v. Greenfield*, No. 16-cv-00110-WJM-NRN, 2019 WL 409340, at *11 (D. Colo. Jan. 31, 2019). The Court can thus consider Mr. Strzelec's opinions to assess whether a genuine dispute of material facts precludes summary judgment.

Alternatively, Defendant criticizes Plaintiff for attempting to incorporate a lengthy expert report into his brief, and suggests that Plaintiff "only cites to broad generalizations in Mr. Strzelec's report." [Doc. 66 at 8]. But Plaintiff has highlighted specific pages of the report that contain some of Mr. Strzelec's opinions about how Safeco, in Mr. Strzelec's view, deviated from industry standards, *see* [Doc. 63 at 15 (citing [Doc. 63-17 at 14, 26–27, 61])], and Defendant fails to support the proposition that a litigant may not rely upon expert opinions to create a genuine dispute of material fact, *see* [Doc. 66 at 8]. Doing so

is commonplace. *See, e.g.*, *Fabian v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03031-WJM-SKC, 2023 WL 5179113, at *4 (D. Colo. Aug. 11, 2023) (finding expert opinions with respect to reasonableness "sufficient—though just *barely*—to raise a genuine issue of material fact concerning whether [d]efendant's actions were unreasonable and in violation of industry standards"); *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1005 (D. Colo. 2020) (expert opinions with respect to reasonableness precluding summary judgment in statutory bad faith claim).

Considering Plaintiff's expert evidence, the Court cannot conclude that every reasonable juror would find in Defendant's favor on Plaintiff's bad faith claims. *See Hunderson v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-02720-CMA-SKC, 2022 WL 4365977, at *2 (D. Colo. Sept. 21, 2022) (denying summary judgment where "[b]oth parties ha[d] presented evidence to support their respective positions regarding reasonableness").  Viewing the evidence in Plaintiff's favor, a reasonable juror may well rely upon Mr. Strzelec's opinions about industry standards to conclude that Defendant acted unreasonably in the context of handling Mr. Terranova's claim, and that Defendant recklessly disregarded the unreasonableness of its conduct.  *Cf. Fabian*, 2023 WL 5179113, at *4.  At the same time, a reasonable juror may well conclude that Mr. Strzelec's opinions are not persuasive as to either element in light of Safeco's evidence. But these determinations cannot be made by the Court on summary judgment; rather, the reasonableness of Defendant's conduct, and the presence of knowing or reckless disregard on Defendant's part with respect to that conduct, is a question of fact for the jury to resolve at trial, based on proof of industry standards and testimony about how Safeco handled Mr. Terranova's claim.  *See Vaccaro*, 275 P.3d at 759; *Schultz*, 429 P.3d

at 847; *see also Foote v. State Farm Fire & Cas. Co.*, No. 20-cv-02342-RMR-MEH, 2023 WL 8780763, at *4 (D. Colo. Dec. 19, 2023) ("It is not for the Court to decide at this stage the credibility of witnesses or the weight to give each piece of evidence; that job must fall to the jury, who is best positioned to make such determinations."); *Seabron v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2013 WL 3713652, at *9 (D. Colo. July 16, 2013) ("[A]ny inquiry into an insurer's reasonableness . . . is fact-specific," judged "by the entire course of conduct between the parties and . . . all information known by the insurer at the time a decision is made.").

Accordingly, the Court need not consider the extent to which Plaintiff's other arguments support the denial of summary judgment. Defendant's Motion for Summary Judgment is respectfully **DENIED** as to the statutory and common law bad faith claims.

## II. Vacatur of the Appraisal Award

Plaintiff moves for partial summary judgment on his claim to vacate the appraisal award, arguing that the award can be set aside under state law because it is infected by mistakes and bias. [Doc. 61 at 8–17]. Defendant cross-moves for summary judgment on the same claim, arguing that it is untimely and that it should be resolved in Defendant's favor on the merits because Plaintiff's evidence does not support disregarding the award. [Doc. 62 at 17–20]. Assuming without deciding that Plaintiff's claim is timely and can be evaluated on its merits, the Court finds that judgment should be entered in Defendant's favor because Plaintiff has failed to meet his burden to show sufficient facts to warrant setting the award aside.

## A.     Legal Standard

"[An] appraisal award issued under an insurance policy is binding so long as the appraisers (including the umpire) have performed the duties required of them by the policy." *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P.3d 425, 433 (Colo. App. 2018).  Generally, "an appraisal award entered by an umpire may be disregarded only if the award was made without authority or was made as a result of fraud, accident, or mistake." *Id.* at 434.  "The burden of demonstrating that the appraised loss amount should be set aside falls on the party challenging it." *Id.*

## B.     Mistake

Starting with Plaintiff's contention that the appraisal award is void for mistake, the Court notes that the Colorado Court of Appeals has specified that an appraisal award's challenger bears the "burden to establish a 'manifest mistake.'" *Id.* (quoting *Emmons v. Lake States Ins. Co.*, 484 N.W.2d 712, 715 (Mich. App. 1992)).[4]  Colorado law thus sets a high bar that would appear to require more than merely showing a mistake exists somewhere in the appraisal award.  *See, e.g.*, *id.* ("Mistakes by appraisers, like those made by arbitrators, are insufficient to invalidate an award fairly and honestly made." (cleaned up)).

Plaintiff identifies three "mistakes" in the appraisal award, but none appears manifest or otherwise material.  First, Mr. Terranova suggests that the appraisal award

---

[4] In reciting the applicable legal standard, Plaintiff suggests that "Colorado follows the legal test for mistake under Section 153 of the Restatement (Second) of Contracts." [Doc. 61 at 7–8].  But Plaintiff does not revisit this notion in the course of his argument or otherwise explain how a defense to contract formation figures into assessing whether an appraisal award demonstrates manifest mistake.  Plaintiff does not argue that the appraisal award itself constitutes a contract or that the Policy should be set aside.  *See generally* [*id.*].

improperly contemplated replacing his windows, which he asserts had nailing flanges, with retrofit style windows that are "not of like kind and quality." [Doc. 61 at 8–10]. Whatever this argument's factual merit, *cf.* [Doc. 64 at 11 (arguing that "there is no credible evidence that these windows were flanged")], the Court agrees with Defendant that Plaintiff "has presented no evidence of the pricing difference between flanged and retrofit windows to establish materiality" with respect to the windows, [*id.* at 12], which Defendant argues totaled only a fraction of the total appraisal award, [*id.* at 1]; *see also* [Doc. 64-6]. Plaintiff's Reply speculates that replacing the flanged windows could "conceivably necessitate" incurring "thousands of dollars" in costs, [Doc. 65 at 8], but that position is not rooted in evidence.

Second, Plaintiff suggests that the appraisal panel improperly failed to determine causation in calculating the award. [Doc. 61 at 10–12]. The dispute largely centers on the umpire's deposition testimony. At his deposition, Mr. Becker testified as follows:

> Q. But here in this appraisal did you go beyond that and also do a cause-and-origin analysis for each of the items within the appraisal award?
> A. Each item? Probably not, no.
> Q. Scrolling through this, do you know, or even your [sic] recollection, which items [for which] you would not have done a causation analysis?
> A. No, I don't.

[Doc. 61-11 at 32:16–23]. Relying on Mr. Becker's testimony, Plaintiff suggests that the "appraisal panel, while theoretically able, never fully addressed what damage was done by the covered event, and as such, was not able to decide the ultimate amount of loss caused by the water loss." [Doc. 61 at 11]. In its Response to Statement of Undisputed Facts, Defendant refers the Court to comments by Mr. Becker that followed that excerpt:

> A. But I will say this: Okay? One of the things that made this very difficult, okay, was this was a building that sat empty for four years before we even got to the point where it went into appraisal. So to try to separate what was caused by the actual water loss at the time of that loss and then fast-forward

four years and say, Was all this damage caused by that water loss, was very, very hard to separate and to figure out.  It wasn't an easy task.  It wasn't like the damage happened a month ago.  Okay?  This is four years this sat.

[Doc. 64 at 6–7 ¶ 18].[5]  In context, the Court does not see an unequivocal admission—or, in Plaintiff's phrasing, a "clear mutual mistake of the appraisal umpire and Safeco appraiser," [Doc. 61 at 11]—that the appraisal panel failed to account for the importance of assessing which damage was caused by the water loss at the Property.  As Defendant argues, Mr. Becker's testimony instead suggests that the panel "gave great consideration to causation during the appraisal process," but that doing so was complicated by the amount of time that had passed since the loss.  [Doc. 64 at 12–13].  Assuming that Plaintiff is correct about the extent to which applicable law would require the appraisal panel to establish a causal basis for each aspect of its award, the Court concludes that Plaintiff has not shown a specific mistake in the award that supports setting it aside.  And even if the appraisal panel failed to conduct a causal analysis as to some unspecified aspects of its award, Plaintiff has not shown how that rose to the level of a "manifest" mistake.

Finally, Plaintiff argues that Safeco's appraiser violated the Policy's provision that, in case of disagreement between the appraisers, the appraisers "shall submit their differences, only, to the umpire."  [Doc. 61 at 12 (emphasis omitted)]; *see also* [Doc. 62-1 at 8].  Plaintiff suggests that Mr. Neufeld overstepped his role by "submit[ting] electronic communications to the appraisal panel, which he argued showed Defendant's 'excess of

---

[5] In support of this statement of fact, Defendant cites an excerpt of Mr. Becker's deposition that does not contain this language.  *See* [Doc. 64 at 7–8 ¶ 18; Doc. 64-8].  But the testimony is presented in Defendant's brief in the form of a screenshot which matches other images of Mr. Becker's deposition, *compare* [Doc. 64 at 7–8 ¶ 18], *with* [Doc. 61-11 at 32:25], and Plaintiff does not dispute the substantive accuracy of the testimony in his Reply, *see* [Doc. 65 at 2 ¶ 18].  Accordingly, the Court concludes that the summary-judgment record properly includes this testimony.

good faith efforts'" and by "submission of the Policy's language to the umpire . . . to subjectively drive down the cost of repairs based on the Safeco appraiser's belief that repairs should have been completed." [Doc. 61 at 12]. Defendant responds that "Mr. Neufeld's submission of materials in support of a disputed position is well in line with the appraisal condition of the Policy." [Doc. 64 at 13]. Drawing all inferences in favor of Plaintiff's characterization of these facts, it is still unclear to the Court how the described behavior could amount to or result in any mistake in the appraisal award, let alone a "manifest" mistake that warrants setting the entire award aside. Plaintiff has not contended that any portion of the appraisal award is inaccurate, nor has he suggested that Mr. Neufeld successfully obtained an alteration in the award's content based on this conduct.

The Court respectfully concludes that the summary-judgment record does not support the conclusion that any of these three issues, whether considered separately or together, rise to the level of manifest mistake. Plaintiff provides no Colorado authority invalidating an appraisal award based on accumulated mistakes, let alone "mistakes" such as these. And Plaintiff's only authority for invalidating an appraisal award due to multiple mistakes arises under Texas law, which, as recognized in the opinion Plaintiff cites, has "never addressed whether mistake, accident, or failure to act with proper authority as to one part of the award warrants setting aside the entire award." *Navarro v. State Farm Lloyds*, No. 7:14-cv-00372, 2015 WL 12778688, at *7 (S.D. Tex. May 4, 2015). In any case, the issues flagged by Plaintiff do not support the conclusion that "the appraisal award does not operate as the umpire or appraisers intended." [Doc. 61 at 9]. Instead, even if they constitute mistakes, and even if they are taken together, they are

minor matters that do not imperil the overall award or otherwise call into question whether the award reflects the work and intentions of the appraisal panel.  *See Andres Trucking Co.*, 488 P.3d at 434.

**C.     Bias**

Alternatively, Plaintiff argues that the appraisal award is the product of pro-Safeco bias on the part of Defendant's appraiser, Mr. Neufeld.  [Doc. 61 at 16].  "[A]n award agreed to by a partial appraiser is not 'fairly and honestly made' where the policy requires appraiser impartiality."  *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 499 P.3d 1069, 1079 n.3 (Colo. App. 2021) (quoting *Andres Trucking Co.*, 488 P.3d at 425).  Here, the appraisal provision in the Policy calls for "a competent and disinterested appraiser." [Doc. 62-1 at 8].  Discussing an appraisal clause that similarly required an "impartial" appraiser, the Colorado Supreme Court has explained:

> [W]e acknowledge a distinction between advocating for a party and explaining a position.  An appraiser can certainly explain her position without running afoul of the provision's impartiality requirement.  An appraiser may, for example, defend her choice of methodology or use of certain data.  Conversely, an appraiser may explain why she feels another appraiser's methodology or use of data is wrong.  In neither instance would the appraiser necessarily be acting as an advocate *on behalf of* a party to the dispute.  An appraiser advocates *for* or *on behalf of* a party when her actions are motivated by a desire to benefit a party.  For example, if an appraiser simply seeks top dollar for a client, that is improper.  In contrast, explaining a position or defending a choice in methodology can be motivated by a desire to reach an accurate outcome.

*Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 53 n.5 (Colo. 2019); *see also id.* at 53 ("[T]he policy requires the appraiser to be unbiased, disinterested, without prejudice, and unswayed by personal interest.").

Mr. Terranova argues that Mr. Neufeld, Safeco's chosen appraiser, "favored his client's side over the opposing party."  [Doc. 61 at 14].  During the appraisal process,

Plaintiff emphasizes, Mr. Neufeld advocated for the position that the appraisal award should be based on costs at the time of the loss, not costs at the time of the award, which would redound to Safeco's benefit.  [*Id.*].  According to Plaintiff, "[t]he only logical reason an insurer's appraiser would stand by pricing that he knew was outdated would be to directly benefit his client and keep costs down."  [*Id.* at 15].  And Plaintiff emphasizes that Mr. Neufeld had a two-hour billing entry that included a "policy discussion" with Safeco's adjuster, after which he emailed policy language to the appraisal panel and then sent them communications that supposedly demonstrated Safeco's good faith claim handling efforts, all "in an effort to reduce Safeco's payout."  [*Id.* at 15–16].  Safeco responds that "[t]here is no evidence to support Plaintiff's contention that Mr. Neufeld was biased."  [Doc. 64 at 14].  As to the costs issue, Defendant asserts that Mr. Neufeld "advocated this position on his own, and simply asked Safeco for documentation to support his position."  [*Id.*].  Defendant also notes that the umpire ultimately rejected Mr. Neufeld's position.  [*Id.*].

The Court respectfully agrees with Defendant that "Plaintiff offers no facts suggesting that Mr. Neufeld's actions in advocating for the 2017 price list were motivated by a desire to benefit Safeco, rather than his own belief that it was the appropriate price list to use given the extensive delays caused by Plaintiff and his representatives, as well as the Policy language."  [*Id.*].  The evidence relied upon by Plaintiff suggests only that Mr. Neufeld took positions in the course of the appraisal process, and that these positions were often favorable to Safeco—but *not* that Mr. Neufeld was motivated by a bias toward Safeco or that he had any sort of disqualifying personal or financial interest in the outcome of the proceedings.  *Cf. Dakota Station II*, 443 P.3d at 53 n.5 ("An appraiser advocates *for* or *on behalf of* a party when her actions are motivated by a desire to benefit a party.").

The facts here do not come close to those that warranted disqualification based on appraiser bias in the cases Plaintiff cites.  *See, e.g.*, *Copper Oaks Master Home Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 15-cv-01828-MSK-MJW, 2018 WL 3536324, at *10–13 (D. Colo. July 23, 2018) (setting aside appraisal award where appraiser's fee was tied to appraisal award amount and appraiser did not make appropriate disclosures); *GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2021 WL 4245372, at *5 (D. Colo. Sept. 16, 2021) (finding no genuine dispute of material fact that appraiser was not impartial where he had "a 'personal interest' in the appraisal, given his close and elaborate business relationships" with law firm); *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, No. 14-cv-03417-LTB, 2016 WL 1321507, at *5 (D. Colo. Apr. 5, 2016), *aff'd*, 886 F.3d 852 (10th Cir. 2018) ("In addition to working on dozens of prior cases in which [the appraiser] Keys was retained by the policyholder, [the policyholder's attorneys] have served as Keys' personal counsel, served as incorporator and registered agent for Keys' companies, taught with Keys, and donated to a Keys-led group involved in pro-policyholder lobbying.").

Even construing the evidence in Plaintiff's favor, mere speculation about "[t]he only logical reason" that Mr. Neufeld would reach certain positions, [Doc. 61 at 15], is insufficient, and Plaintiff has presented no actual evidence of a conflict of interest or other disqualifying matter.  Upon review of the summary-judgment record, Plaintiff has adduced no evidence that Mr. Neufeld was anything other than "unbiased, disinterested, without prejudice, and unswayed by personal interest," as contemplated by Colorado law.  *Dakota Station II*, 443 P.3d at 53.

Plaintiff's arguments for judgment in his favor on the claim to vacate the appraisal award are unpersuasive.  Summary judgment for Defendant is appropriate because Plaintiff cannot meet his burden to set aside the appraisal award for manifest mistake or bias on this record, and Plaintiff's Response to Defendant's Motion for Summary Judgment merely incorporates the arguments made in Plaintiff's Motion for Summary Judgment.  *See* [Doc. 63 at 20].  Accordingly, Plaintiff's Motion for Summary Judgment is respectfully **DENIED** and Defendant's Motion for Summary Judgment is respectfully **GRANTED in part** as to the claim for vacatur of the appraisal award.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Plaintiff's Motion for Partial Summary Judgment [Doc. 61] is **DENIED**;

(2)    Safeco Insurance Company of America's Motion for Summary Judgment [Doc. 62] is **GRANTED in part** and **DENIED in part**; and

(3)    A Telephonic Status Conference is **SET** for **October 2, 2024, at 11:00 a.m.**, for purposes of setting a Final Pretrial/Trial Preparation Conference and trial date in this matter with respect to the remaining claims for statutory and common law bad faith.  The Parties shall participate using the following dial-in information:  **888-363-4749; Access Code: 5738976#**.

DATED:  September 5, 2024              BY THE COURT:

_____
Nina Y. Wang
United States District Judge